## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **ANDRES GARCIA,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:23-CV-01217-DH** |
| | § | |
| **HAYS COUNTY SHERIFF'S** | § | |
| **OFFICE, ET AL.,** | § | |
| *Defendants* | § | |

## ORDER

Before the Court are Defendants Hays County Sheriff's Office ("HCSO"), Robert Blanchard, Bryan Thomas, Jean-Claude Cornic, Stefan Haltermann, and Scott Whetstone's (the "Individual Defendants," and together with HCSO, "Defendants") motions for summary judgment. Dkts. 39; 40.[1] After reviewing these filings and the relevant case law, the Court grants in part and denies in part the Individual Defendants' motion and grants HCSO's motion.

## I.    BACKGROUND

Plaintiff Andres Garcia initiated this lawsuit under 42 U.S.C. §§ 1983 and 1985 based on Defendants' alleged violations of (and conspiracy to violate) his Fourth and Fourteenth Amendment rights during an arrest. *See* Dkt. 1. The Individual

---

[1] Defendants moved to file under seal certain exhibits to their motions for summary judgment to protect the privacy of Garcia's medical records. Dkt. 38, at 2. Garcia did not respond to the motion. Because "[t]he need to protect sensitive personal and medical information is among those [interests] that courts have found to justify nondisclosure," the Court finds that the exhibits containing Garcia's medical records should be sealed. *Williams v. Luminator Holdings, LP*, No. 3:12-CV-2975-M, 2012 WL 5878370, at *2 (N.D. Tex. Nov. 21, 2012). **IT IS OREDERED** that Defendants' motion to seal, Dkt. 38, is **GRANTED**. The Clerk of Court shall file the exhibits attached to Defendants' motion, Dkt. 38, under seal.

Defendants arrived at Garcia's home in response to a 9-1-1 call from his family stating that Garcia was intoxicated and "in his room hitting the ground with a stick and saying he is going to kill his family." Dkt. 39-3, at 6, 8, 13, 29, 35. Upon arrival to the home, the officers spoke with Garcia's brothers on the porch, who reported being scared as a result of Garcia's threats. Dkt. 39-3, at 29, 35; 39-5, at 12. Based on their discussion with the brothers, the Individual Defendants formed "an arrest plan" based on Garcia's alleged commission of a terroristic threat to a family member, which is a class A misdemeanor under Texas law. Dkts. 39-3, at 33, 35; 39-6, at 6.

The officers then entered the home and commanded Garcia to open his bedroom door. Dkts. 39-3, at 25, 28, 35. Though the officers devised a plan to ram open the door, Garcia ultimately opened the bedroom door himself. Dkt. 39-2, at 28, 29-30. Within two seconds of Garcia having opened the door, the officers directed him to step out from his bedroom. Dkt. 39-3, at 35, 40. Garcia then crossed his arms in front of him and said "no" in response to the initial request to step out of his bedroom; officers told Garcia he was under arrest and told him to turn around. *Id.* Garcia then uncrossed his arms, took one step backward, and then opened his arms in a gesture commonly associated with the question "why?" *Id.* Blanchard deployed his taser within two seconds of Garcia's initial "no" and step backwards. *Id.*[2] Garcia then fell backward onto the floor, and the four officers quickly subdued him while Blanchard

---

[2] While Defendant Blanchard wrote in his case report that Garcia "initially ha[d] his hands up" but "began to bring them down to his waistline"—which Blanchard identifies as a "high threat area where weapons are concealed"—the  video evidence reveals that Garcia only brought his hands down towards his waist once Blanchard deployed the taser on his abdomen in what was clearly a gesture of pain. Dkt. 39-2, at 34; 39-3, at 35, 40.

continued to tase Garcia. Dkts. 39-2, at 25, 37. Garcia declined medical attention and has never sought medical treatment related to the force the officers used against him during this incident. Dkt. 38-2, at 32, 35, 43, 46-48.

The Individual Defendants and the HCSO separately moved for summary judgment on Garcia's claims against them. Dkts. 39; 40. Garcia opposed the motions, Dkts. 41; 42, and objected to certain exhibits attached to the Individual Defendants' motion for summary judgment. Dkt. 43. In their reply, the Individual Defendants likewise objected to one of the exhibits Garcia attached to his response. Dkt. 47. HCSO also objected to a piece of evidence Garcia attached to his response to its motion. Dkt. 46.[3]

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[3] Because the Court did not rely on any of the objected-to exhibits in ruling on the motions for summary judgment, the parties' objections to evidence are **OVERRULED AS MOOT**. *Patton v. Meridian Sec. Ins. Co.*, 617 F. Supp. 3d 516, 526 (N.D. Tex. 2022) (overruling as moot objections to summary judgment evidence where "'the court did not find it necessary to rely on this evidence in support of its decision'" (quoting *Detgen ex rel. Detgen v. Janek*, 945 F. Supp. 2d 746, 753 (N.D. Tex. 2013), *aff'd*, 752 F.3d 627 (5th Cir. 2014))).

242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports their claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    THE INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Garcia brought claims against the Individual Defendants under section 1983 for wrongful arrest and excessive force in violation of the Fourth and Fourteenth Amendments, as well as claims for conspiracy to violate Garcia's constitutional rights under section 1985. Dkt. 1, at 7-9. The Individual Defendants moved for summary judgment on all of Garcia's claims against them, arguing that they are entitled to qualified immunity on Garcia's wrongful-arrest and excessive-force claims and that the conspiracy claims fail as a matter of law under the intracorporate-conspiracy doctrine. *See* Dkt. 39.

### A.    The Individual Defendants are entitled to summary judgment on Garcia's false-arrest claims.

Garcia brought claims against the Individual Defendants for false arrest, alleging that the officers unlawfully arrested him without first seeking a warrant in violation of the Fourth and Fourteenth Amendments. Dkt. 1, at 4, 6-7. The Individual Defendants move for summary judgment on Garcia's false-arrest claims, arguing that he failed to overcome their assertion of qualified immunity. Dkt. 39, at 5-8. Qualified immunity shields a public official "from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 592 U.S. 7, 8 (2020). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To meet this burden, a plaintiff must plead specific

5

allegations demonstrating: "(1) the violation of a constitutional right that (2) was clearly established at the time of the alleged misconduct." *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018).[4] "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Because the Individual Defendants assert a qualified-immunity defense, Garcia "must rebut the defense by establishing a genuine fact issue as to whether the [officers'] allegedly wrongful conduct violated clearly established law" or by establishing that the officials' allegedly wrongful conduct violated clearly established law. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). When video evidence is available, the court should consider "the facts in the light depicted by the videotape." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quotation omitted).

The Individual Defendants contend that Garcia cannot establish a constitutional violation because they had probable cause to arrest Garcia without a warrant for terroristic threat based on the statements Garcia's brothers (who called 9-1-1 to report the incident that led to Garcia's arrest) made to the officers when they

---

[4] The Fifth Circuit has at times described the second prong as an inquiry into whether an official's "actions were objectively unreasonable in light of clearly established law." *See, e.g.*, *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021). As it has recently clarified though, "there is no standalone 'objective unreasonableness' element to the Supreme Court's two-pronged test for qualified immunity" as "[t]hat language is a vestige of older case law that predates the Supreme Court's current test." *Hicks v. LeBlanc*, 81 F.4th 497, 503 n.14 (5th Cir. 2023) (internal citations removed).

arrived at the scene. Dkt, 39, at 6-7. Specifically, the Individual Officers point to evidence of Garcia's brothers telling officers at the scene that Garcia "was intoxicated and was threatening to kill [the brothers]" and that they "both stated that they were in fear of imminent serious bodily injury or death." Dkts. 39-3, at 29, 35, 40; 41-1; 36-3, at 35. Garcia counters that the Individual Defendants did not have enough information to conclude that he intended to place his family members in imminent fear for their safety, highlighting that in the same video of the incident cited by the Individual Defendants, Garcia "is saying he is going to kill various family members in one voice, and then in another voice is crying and saying not to do it." Dkts. 41, at 10; 41-1. In their reply, the Individual Defendants point to the objective video evidence demonstrating that Garcia's brothers provided them with enough information to establish probable cause to arrest Garcia for terroristic threat. Dkt. 47, at 2-4.

In order to support his claim for an unlawful arrest, Garcia must establish that he was arrested without probable cause. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). Establishing probable cause "is not a high bar," but rather requires a "fair probability" that the defendant committed the crime, which requires more than a "bare suspicion" but less than a preponderance of the evidence. *Kaley v. United States*,

571 U.S. 320, 338 (2014) ("Probable cause, we have often told litigants, is not a high bar: It requires only the 'kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act."'" (citations omitted)); *Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023) (citation omitted). Under Texas law, a person commits the offense of terroristic threat if he "threatens to commit any offense involving violence to any person or property with intent to ... place any person in fear of imminent serious bodily injury." Tex. Penal Code § 22.07(a)(2). "[T]he requisite intent can be inferred from the acts, words, and conduct of the accused." *Zorn v. State*, 22 S.W.3d 1, 3 (Tex. App.—Tyler 2002, pet. dism'd).

Here, the Individual Defendants presented sufficient evidence demonstrating that they reasonably concluded there was probable cause to arrest Garcia for terroristic threat based on the statements they received from his brothers. Dkts. 39-3, at 35, 40; 41-3. Moreover, Garcia's two disputes with the Individual Defendants' finding of probable cause fail to present a genuine dispute of material fact as to whether probable cause existed to arrest Garcia for terroristic threat. Garcia first challenges whether the officers sufficiently investigated the incident before deciding to arrest Garcia. Dkt. 41, at 8-9. Yet, as the Individual Defendants point out, the standard by which the Court assesses the existence of probable cause is not "whether [the Individual Defendants] investigated [the brothers]'s claims to h[is] satisfaction" or "whether [the Individual Defendants] could have gathered more facts to [Garcia]'s liking" but rather whether they had "enough facts, from any sources, to reasonably conclude" that Garcia violated section 22.07(a)(2) of the Texas Penal Code.

Dkt. 47, at 3; *Matthews v. Green*, No. 23-10178, 2024 WL 448352, at *3 (5th Cir. Feb. 6, 2024). The Court finds that they did.

While Garcia is correct that the officers could not conclusively establish Garcia's intent prior to making the arrest, the Individual Defendants were not required to do so in order to find a "fair probability" that Garcia committed the offense of terroristic threat. *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000) ("[P]robable cause 'does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false' … Rather, the probable cause analysis only requires that we find a basis for an officer to believe to a 'fair probability' that a violation occurred." (citations omitted)). Considering the undisputed body-worn camera footage demonstrating that Garcia's two brothers reported to the officers that (1) Garcia got into an altercation with his father who then left the scene in fear, (2) Garcia had said the full names of his three brothers and that he intended to kill them, (3) Garcia had used methamphetamines and was therefore unpredictable, (4) Garcia had been banging a stick loudly on the floor of his room such that it was audible outside the room, and (5) the two brothers responded "yes" when asked whether they were scared, the Court concludes that the Individual Defendants had sufficient information to infer that there was a "fair probability" that Garcia intended to place his family members in fear of imminent serious bodily injury and as such, committed a terroristic threat under Texas law. Dkts. 39-3, at 35, 40; 41-3; Tex. Penal Code § 22.07(a)(2); *Kaley*, 571 U.S. at 338.

Because the Individual Defendants had probable cause to arrest Garcia, they did not, as a matter of law, violate his Fourth Amendment right to be free from false arrest and are entitled to qualified immunity. *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) ("If no constitutional right has been violated, the inquiry ends and the defendants are entitled to qualified immunity."). The Individual Defendants' motion for summary judgment on Garcia's false arrest claim will be granted.

## B. The Individual Defendants, except for Blanchard, are entitled to summary judgment on Garcia's excessive-force claims.

Garcia also brought claims against the Individual Defendants for excessive force, alleging that they violated his Fourth Amendment rights "by tasering him and dragging him outside with his pants down." Dkt. 1, at 8. To succeed on his excessive-force claim, Garcia must establish "'(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). "Excessive force claims are necessarily fact intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Id.* (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam)). When deciding whether to use force, officers must determine "not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). The reasonableness of the officer's conduct cannot be judged with the benefit of 20/20

hindsight but rather must be assessed from the viewpoint of a reasonable officer on the scene at that very moment. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

The Individual Defendants assert that they are entitled to qualified immunity and that summary judgment should be entered in their favor on Garcia's excessive-force claims because: (1) Garcia "improperly lumps all of the Individual Defendants together" when only Blanchard tasered Garcia; (2) Garcia cannot establish a Fourth Amendment violation because he has not shown evidence of a constitutionally sufficient injury or that the officers' use of force was unreasonable under the circumstances; and (3) Garcia cannot point to clearly established law giving the officers notice that the use of force was unreasonable. Dkt. 39, at 8-16. Garcia did not respond to the Individual Defendants' first argument but insists that he has shown that the officers' use of force was excessive in violation of clearly established law, such that their assertion of qualified immunity should be denied. Dkt. 41, at 13-18.

       1.    Garcia has not established a constitutional violation against the Individual Defendants apart from Blanchard.

The Individual Defendants argue that Garcia cannot establish a constitutional violation against any of them—including the individual officer, Blanchard, who tasered Garcia repeatedly. Dkt. 39, at 9-14. In particular, the Individual Defendants charge Garcia with failing to identify each individual's role in the alleged excessive force they used against Garcia. *Id.* at 9. In response, Garcia identifies Blanchard's use of the taser and officers Thomas, Cornic, and Whetsone's use of "soft open-hand" techniques to secure Garcia's arrest as the uses of force pertinent to his claims. Dkt. 41, at 2, 7, 15-16. Because the Fifth Circuit has emphasized the importance of

"examin[ing] the actions of defendants individually in the qualified immunity context," the Court will assess the factual basis of Garcia's excessive-force claims against each Individual Defendant. *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) ("[W]e have consistently examined the actions of defendants individually in the qualified immunity context.").

### a.  Defendant Haltermann

Initially, the Cout finds that Defendant Haltermann is entitled to summary judgment on the excessive-force claim given that Garcia has not identified any use of force by Haltermann. While Garcia complains of Haltermann's initial plan—one that never came to fruition— to use a "ram" to knock down the bedroom door, Garcia does not identify any use of force by Haltermann. Dkt. 41, at 13-14. Because Garcia did not present any evidence as to Haltermann's participation in use of force against Garcia, a jury could not find that Haltermann violated Garcia's Fourth Amendment right to be free from excessive force. *Meadours*, 483 F.3d at 421; *Haywood v. City of El Paso*, 761 F. Supp. 3d 975, 991 (W.D. Tex. 2025) (granting summary judgment in favor of certain officers where plaintiff "produced no evidence showing that [the officers] violated his constitutional right to be from an excessive use of force" and thus had "not carried his burden at the first step of the qualified-immunity analysis").

### b.  Defendants Thomas, Cornic, and Whetstone

The Court similarly finds that Defendants Thomas, Cornic, and Whetstone are entitled to summary judgment on Garcia's excessive force claims against them. Garcia alleges that Thomas, Cornic, and Whetstone used excessive force when they

"all applied open hand techniques causing pain to Garcia." Dkt. 41, at 15. However, as the Individual Defendants point out, Garcia provided no evidence demonstrating that he suffered an injury as a result of the use of "open hand techniques" to secure his arrest. Dkt. 47, at 9. To establish an injury in support of his excessive-force claim, Garcia must present evidence that he "suffered at least some form of injury" resulting from the use of force. *Flores*, 381 F.3d at 397 (internal citation removed). At most, Garcia insists that such techniques *can* cause "broken bones, torn ligaments and possible irreparable damage to the extremities," but cites only to an incident report prepared by the Individual Defendants indicating that "soft open-hand control" can include "[e]scort methods, joint manipulation, and pressure points"—not anything suggesting that Garcia himself experienced such an injury, or any injury at all, resulting from this use of force. Dkts. 47, at 9; 41-4, at 2. Because there is no dispute that Garcia did not suffer any injury as a result of Thomas, Cornic, or Whetstone's use of force,[5] Garcia cannot establish an essential element of his excessive-force claim. Fed. R. Civ. P. 56(a), (c). As such, Defendants Thomas, Cornic, and Whetstone are entitled to summary judgment on Garcia's excessive-force claims against them.

### c. Defendant Blanchard

Finally, the Court concludes that a jury could find Blanchard's use of force unreasonable under the circumstances such that it violated the Fourth Amendment and that Garcia has established that he suffered more than *de minimis* injury as a result of Blanchard's tasering. Dkt. 39, at 10-14. In *Graham*, the Supreme Court

---

[5] The court notes that Garcia also failed to individually identify the specific uses of force by either Thomas, Cornic, or Whetstone. *See Meadours*, 483 F.3d at 421.

instructed courts to use the following factors to determine whether an officer used unreasonable force: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 389. Here, a reasonable jury could find that Blanchard's use of force was unreasonable because, viewing the evidence in the light most favorable to Garcia, Garcia was arrested for a misdemeanor, did not pose any objective threat to the officers, and had failed to comply with officer orders for only a few seconds when Blanchard deployed his taser. The Court will evaluate each *Graham* factor in greater detail below.

The first *Graham* factor weighs against the reasonableness of Blanchard's use of the taser on Garcia given that the criminal activity at issue was a misdemeanor. Although the Individual Defendants are correct that the crime for which Garcia was lawfully arrested—terroristic threat—has been labeled as "an assaultive charge" by some jails, it is also a misdemeanor offense—which counsels against the severity of the crime. Dkt. 39-3, at 33 (case report noting that Garcia was arrested for "a class A misdemeanor"); 39-6, at 6 (booking report indicating that Garcia was arrested for a misdemeanor offense); Tex. Penal Code §§ 22.07(a)(2), (c)(1); Dkt. 39, at 11 (citing *Hayes v. Nacogdoches Cnty.*, No. 6:15-CV-608-JDL, 2016 WL 6235510, at *14 (E.D. Tex. Oct. 25, 2016) (overruling objection to testimony from jail administrator explaining that Wood County's jail describes terroristic threat as "an assaultive charge")). While the Court appreciates that Garcia's threats of violence towards his

family were certainly not insignificant, an arrest for a misdemeanor offense nonetheless counsels against the use of force. *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (finding the "severity" factor from *Graham* militated against a use of force where the alleged crime was a misdemeanor) (citing *Reyes v. Bridgwater*, 362 F. App'x 403, 407 n.5 (5th Cir. 2010))).

Second, Garcia did not pose an immediate threat to the four officers surrounding him at the time Blanchard used his taser on Garcia. According to the objective video evidence, Blanchard deployed his taser within five seconds of Garcia opening his bedroom door and within three seconds of officers directing Garcia to step out of the doorframe. Dkt. 39-3, at 35, 40. During these five seconds, officers commanded Garcia to step out of the room, Garcia crossed his arms in front of his chest and said "no," and then took one small step backwards and opened his hands in front of his chest at the moment Blanchard used his taser on Garcia's chest. *Id*. The Individual Defendants argue that Blanchard "reasonably believed that [Garcia] could use [a] baseball bat to harm" the officers because there was a baseball bat on the floor behind Garcia and they presented evidence that a doorway constitutes a "fatal funnel" because officers "are easily exposed to whatever lays on the other side." Dkts. 39, at 11-12; 39-16, at 4. Although the Individual Defendants argue that Garcia could have lunged for a bat lying on the floor behind him in the bedroom, nothing in the video—including Garcia's crossing his arms in front of him—suggests that there was any basis for the officers to conclude that Garcia was imminently about to do so. *See* Dkt. 39-2, at 35, 40.

Moreover, the Court assesses the threat posed to the officers based on the actual circumstances surrounding the use of force, not an officer's subjective fear that a suspect might at some future time lunge for a weapon. *United States v. Wangler*, 987 F.2d 228, 230 (5th Cir. 1993) ("We have emphasized that the standard is an objective one and '[t]he officer's state of mind, or his stated justification for his actions, is not the focus of our inquiry.'" (quoting *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc))); *see also Poole v. City of Shreveport*, 691 F.3d 624, 626, 628 (5th Cir. 2012) (explaining that "[c]rucially," the excessive force analysis "must be objective," requiring consideration of the officer's actions "without regard to their underlying intent or motivation" (quoting *Graham*, 490 U.S. at 397)). Because Garcia did not threaten officers during the five seconds he stood in the doorway of his bedroom with his hands visible in front of him, a jury could conclude that no reasonable officer could have perceived Garcia to pose an immediate threat to officer safety.

Third, a jury could conclude that Garcia's initial "no" and small step backward did not constitute active resistance or an attempt to flee warranting Blanchard's use of force. The Individual Defendants characterize Garcia's failure to immediately comply with their commands as active resistance, as defined by HCSO, because he stated "no" in response to commands to step forward and instead took one small step backwards. Dkts. 39-3, at 35; 41-4, at 2.[6] Yet the Individual Defendants cite no case

---

[6] While the Court understands that HCSO defined Garcia's resistance as "active" and thus warranting use of force, the standard by which this Court evaluates an officer's use of force is its reasonableness under the Constitution, as interpreted by courts, not HCSO's own definition of what compliance with the Fourth Amendment requires.

law in support of this point, and while "[i]t is unclear at what point passive resistance becomes the sort of active resistance which justifies force," here Garcia's actions fall short of the threatening actions the Fifth Circuit has found to constitute active resistance justifying use of force—especially given the absence of a safety threat to officers and the speed with which Blanchard deployed his taser. *Trammell*, 868 F.3d at 341 (reversing entry of summary judgment for officers where defendant was "not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp"); *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (finding that "a reasonable jury could find that the degree of force used was not justified where the officer 'engaged in very little, if any, negotiation' with the suspect and 'instead quickly resorted to'" force (internal citation omitted)); *Hanks v. Rogers*, 853 F.3d 738, 742, 746 (5th Cir. 2017) (concluding that plaintiff engaged in "at most, passive resistance" where he verbally questioned officer commands and "made a small lateral step with his left foot").

Garcia was "neither aggressive nor violent towards the officers prior to" the tasering and "there was little indication that he would flee" during the three seconds in which Garcia failed to comply with officer orders; a reasonable jury could thus conclude that because Blanchard used very little, if any, negotiation before resorting to physical violence, his tasing did not constitute the required "measured and ascending" response calibrated to Garcia's conduct. *Trammell*, 868 F.3d at 342; *see also Starr v. Marion Cnty.*, 573 F. Supp. 3d 1076, 1085 (S.D. Miss. 2021) ("The general rule is that noncompliance does not permit the use of physical force unless the

individual's passive resistance poses some sort of threat."); *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009) (determining that a reasonable jury could find use of force unreasonable where officer "quickly resorted" to use of force instead of engaging in negotiation with suspect).

In challenging whether Garcia has presented sufficient evidence of an injury resulting from Blanchard's tasering, the Individual Defendants point to testimony from Garcia's deposition where he agreed that he did not appear to be in pain in a video of him following the incident, refused medical treatment following the incident, and has never sought medical treatment related to the tasering. Dkts. 39, at 12-13; 38-2, at 32, 35, 43, 46-48. Garcia, in turn, presented photographic evidence of the welt left on his stomach due to Blanchard's initial deployment of the taser, and the Individual Defendants' photographic evidence confirms that the taser left marks where it made contact on Garcia's stomach and on his "left butt cheek." Dkts. 39-2, at 9; 39-3, at 44-45; 41-5. The Individual Defendants emphasize that Garcia "has never sought medical treatment" related to the incident, Dkt. 39, at 13 (citing Dkt. 38-2, at 32, 35, 43, 46-48), yet there is no such requirement to establish a constitutionally sufficient injury resulting from Blanchard's use of force. *See, e.g.*, *Beck v. Alford*, 32 F.3d 565, 1994 WL 442383, at *1 (5th Cir. 1994) (there is no "requirement that injury is necessarily *de minimis* unless there is some objective medical evidence supporting its existence."); *Durant v. Brooks*, 826 F. App'x 331, 336 (5th Cir. 2020) (rejecting officer's argument that "corroborating medical evidence" of injury needed to survive summary judgment); *Benoit v. Bordelon*, 596 F. App'x 264,

268 (5th Cir. 2015) ("That [plaintiff] did not provide medical records of his throat injury is not fatal to his claim.").

Here, the photographic evidence of an injury in the form of welts resulting from Blanchard's use of force is sufficient to establish Garcia suffered more than a *de minimis* injury as result of the tasering. Dkt. 41-5; *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (noting that while the injury caused by an allegedly excessive use of force "must be more than de minimis," it need not be significant) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). The Individual Defendants cite *Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013), for the proposition that Garcia cannot establish a constitutionally sufficient injury, yet there the plaintiff "was not subdued by the tasing" but rather "was able twice to remove the taser leads from his body, pick up [a] bat, and charge [an officer]." Here, in contrast, the video evidence reveals that Garcia was subdued by the tasering and, as explained above, did not make any threatening gestures towards the officers. Dkt. 39-2, at 35, 40. Moreover, even if Garcia's injury is "relatively insignificant," it is nonetheless cognizable if, given the context in which the force was deployed, it resulted from "an officer's unreasonably excessive force." *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) ("Any force found to be objectively unreasonable necessarily exceeds the de minimis threshold[.]"). Having found that a jury could find Blanchard's use of the taser on Garcia to be unreasonably excessive, the Court finds that Garcia has presented sufficient evidence of an injury at this time.

2.    Garcia has identified clearly established law establishing the unlawfulness of Blanchard's use of force

The Court further finds that Garcia has met his burden of identifying "a body of relevant case law" in which an officer acting under similar circumstances as Blanchard was held to have violated the Constitution. *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020). Clearly established law must be particularized to the facts of the case and should not be defined at a high level of generality. *White v. Pauly*, 580 U.S. 73, 79 (2017); *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (instructing appellate courts "not to define clearly established law at too high a level of generality"). Though a plaintiff need not identify "a case directly on point," he must nevertheless demonstrate that "existing precedent" has "placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (internal citation removed). Ultimately, "[t]he *sine qua non* of the clearly-established inquiry is 'fair warning.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc); *Newman*, 703 F.3d at 763 ("[t]he central concept is that of 'fair warning'"). In "an obvious case," the *Graham* excessive-force factors themselves can clearly establish the right at issue without a body of relevant case law. *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016); *see also White*, 580 U.S. at 79 ("Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent." (internal citation removed)).

Here, Garcia identified *Trammel*, *Hanks*, and *Darden* as giving Blanchard notice that "when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced." Dkt. 41, at 7 (citing *Trammell*, 868 F.3d at 343), 15

(citing *Hanks*, 853 F.3d at 747); 17 (citing *Darden*, 880 F.3d at 731). As in *Trammel*, where the Fifth Circuit confirmed that it was "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp[,]" the Court finds that it was clearly established that tasing Garcia when his only resistance, over three seconds, was to state "no" and take one step backwards with his hands visible was unreasonable. *Trammell*, 868 F.3d at 343; *Darden*, 880 F.3d at 731; *Hanks*, 853 F.3d at 747.

The Individual Defendants cite several cases for the proposition that "'where a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by deploying their tasers to subdue him.'" Dkt. 39, at 15 (quoting *Buchanan*, 530 F. App'x at 314). Yet all of the cases the Individual Defendants cite in support of this contention involve suspects who, unlike Garcia, actively threatened officers or whom officers reasonably believed to be armed. In *Buchanan*, for example, plaintiff had "charge[d] [an officer] with a bat raised over his head." *Buchanan*, 530 F. App'x 315; *see also Poole*, 691 F.3d at 629 (finding use of force not unreasonable where plaintiff "physically resisted" commands, including by "kicking" officer); *Ramirez v. Escajeda*, 44 F.4th 287, 294 (5th Cir. 2022) (concluding that use of a taser was reasonable where decedent "may or may not have [had] a weapon" when "officer approache[d] him rapidly, alone, and in the dark").

While Defendants are correct that in *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015), the Fifth Circuit determined that "an officer's application of a Taser

to an unarmed, seated suspect who fails to comply with an order to get on the ground is [not] 'objectively unreasonable in light of clearly established law,'" in the years since that case the Fifth Circuit has found that "clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation."[7] *Hanks*, 853 F.3d at 747; *see also Trammell*, 868 F.3d at 342 ("Given that only three seconds elapsed between [the officer's] initial request that Trammel place his hands behind his back and when [officers] tackled [plaintiff], we find that a reasonable jury could infer that the officers used very little, if any, negotiation before resorting to physical violence, and that the officers' conduct did not constitute the required 'measured and ascending' actions calibrated to [plaintiff]'s conduct."). As such, binding Fifth Circuit precedent put Blanchard on notice that deployment of his taser would be unconstitutional when only three seconds had elapsed between the officers' commands and Blanchard's use of the taser, Garcia did not pose any immediate threat or flight risk, and Garcia only passively resisted officer commands by saying "no" and taking one small step backwards. Dkt. 39-2, at 35, 40. Garcia has thus overcome Blanchard's assertion of qualified immunity at this time.

---

[7] Although *Hanks* involved a "minor traffic violation," as explained above, the severity of Garcia's alleged crime—a misdemeanor—did not weigh in favor of Blanchard's almost-immediate use of force. *Hanks*, 853 F.3d at 747.

**C.    The Individual Defendants are entitled to summary judgment on Garcia's conspiracy claims.**

Garcia finally brought claims against the Individual Defendants under section 1985, alleging that "they engaged in a conspiracy designed to deprive [Garcia] of the equal protection of the laws, equal privileges or immunities of the laws, and the access to the courts and due process." Dkt. 1, at 5. Section 1985(3) imposes liability on two or more persons who "conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws." § 1985(3). The Individual Defendants argue that, since they were all employed by HCSO at the time of Garcia's arrest, his section 1985(3) claims against them are barred by the intracorporate-conspiracy doctrine. Dkt. 39, at 16. Garcia responds by insisting that this Court decline to apply binding Fifth Circuit precedent and instead deny the Individual Defendants' invocation of the intracorporate-conspiracy doctrine based on out-of-circuit precedent. Dkt. 41, at 18-19.

Under the intracorporate-conspiracy doctrine, "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769-771 (1984)). Although the "[Supreme] Court has not given its approval to this doctrine in the specific context of § 1985(3)," *see id.* at 154, the Fifth Circuit has adopted the intracorporate-conspiracy doctrine when considering section 1985(3) conspiracy claims. *Konan v. U.S. Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024), *cert. granted*, No. 24-351, 2025 WL 1151223, at *1 (U.S. Apr. 21, 2025) (finding plaintiff's section 1985(3) claim to be "barred by

the intracorporate-conspiracy doctrine, which precludes plaintiffs from bringing conspiracy claims against multiple defendants employed by the same governmental entity" (cleaned up)); *Thornton v. Merch.*, 526 F. App'x 385, 388 (5th Cir. 2013) (affirming dismissal of section 1985(3) conspiracy claim under intracorporate-conspiracy doctrine).

While Garcia argues that the Supreme Court, which has granted certiorari in *Konan*, "should rule that in *Konan* the Fifth Circuit's rule is wrong," this Court must apply binding Circuit precedent "until the Supreme Court holds differently." *Wood v. Patton*, 130 F.4th 516, 522 (5th Cir. 2025) (citing *Texas v. United States*, 126 F.4th 392, 406-07 (5th Cir. 2025)). And as the Individual Defendants point out, the Supreme Court did not grant certiorari on the question of the application of the intracorporate-conspiracy doctrine to section 1985(3) claims. Dkt. 47, at 10; Petition for Writ of Certiorari, *Konan*, 2024 WL 4360481 (No. 24-351). Moreover, Garcia's invocation of out-of-circuit precedent applying a contrary rule is inapt given that this Court has no authority to choose to disregard binding Fifth Circuit precedent. Dkt. 41, at 19 (first citing *Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1257-58 (3d Cir. 1978) (en banc), *rev'd on other grounds*, 442 U.S. 366 (1979); and then citing *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1127 (10th Cir. 1994)); *Perez v. Brown & Williamson Tobacco Corp.*, 967 F. Supp. 920, 925 (S.D. Tex. 1997) ("It is well established that a federal district court must generally apply an interpretation of law articulated by its circuit court of appeals.").

24

Because the Fifth Circuit has "consistently held that an agency and its employees are a 'single legal entity which is incapable of conspiring with itself,'" Garcia's conspiracy claims—which allege that the Individual Defendants conspired to violate his constitutional rights as employees of HCSO—fails as a matter of law under the intracorporate-conspiracy doctrine. Dkt. 1, at 5; *Konan*, 96 F.4th at 805 (quoting *Thornton*, 526 F. App'x at 388); *see also In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021) (noting that "[t]he district court was not free to overturn [Fifth Circuit precedent]"). Summary judgment will be entered in the Individual Defendants' favor on Garcia's section 1985 conspiracy claims.

*    *    *

Based on the foregoing, the Court will grant the Individual Defendants' motion for summary judgment on all of Garcia's claims except for his excessive-force claim against Blanchard.

## IV.    HCSO'S MOTION FOR SUMMARY JUDGMENT

HCSO offers two bases for its motion for summary judgment, arguing that it is not a legal entity capable of being sued and that any *Monell*[8] claim against the HCSO fails because Garcia has not demonstrated a constitutional violation or an official policy that caused such a violation. Dkt. 40, at 3-1. Garcia responds by requesting that the Court "add in" Hays County (the "County") as the proper defendant for his *Monell* claims and further insists that his failure-to-train, failure-to-supervise, inadequate-hiring-policy, and inadequate-disciplinary-policy claims

---

[8] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

against the County survive summary judgment. Dkt. 42, at 3-13. In its reply, HCSO urges the Court to deny Garcia's request to amend his complaint to add the County and maintains that Garcia's *Monell* claims should nonetheless be dismissed on their merits. Dkts. 46, at 2-10.

Initially, Garcia acknowledges that HCSO is a non-jural entity that is not capable of being sued but insists that "the law simply requires Hays County to be named as the respondent." Dkt. 42, at 3-4. Garcia cites *Darby v. Pasadena Police Department*, 939 F.2d 311, 315 (5th Cir. 1991), for the proposition that the Court should add the County as a defendant or allow him to amend his complaint to do so because the County will not be prejudiced by its joinder to the lawsuit because it had notice of the case through HCSO. *Id.* at 4. While HCSO is correct that typically a party must show good cause under Rule 16(b) to amend its complaint to join parties after the deadline to do so has passed, the Fifth Circuit has instructed that "[t]o regard the plaintiffs' selection of the wrong government officials in mounting this suit as anything more than a remedial pleading defect ... would be to elevate form over substance." Dkt. 46, at 2-3; *Darby*, 939 F.2d at 315.

In *Darby*, the Fifth Circuit allowed a plaintiff to amend his complaint to join the correct governmental entity even where plaintiff "left his error uncorrected for two and a half years" because the correct juridical entity had received notice of the lawsuit and would not be prejudiced by its addition to the lawsuit since its attorney had been defending the lawsuit the whole time. *Id.* ("The City received notice and, right up until the eve of trial, conducted its case exactly as it would have had Darby

sued the proper entity."). HCSO offered no argument on whether the County received notice of this lawsuit or would be prejudiced by its inclusion. *See* Dkt. 46. Because, as explained below, Garcia's *Monell* claims against the County nonetheless fail even when brought against the correct defendant, the Court declines to enter judgment in favor of HCSO or the County on the basis of Garcia's pleading failure alone.

Garcia brought *Monell* claims against the County under theories of failure-to-train, failure-to-supervise, failure-to-discipline, and inadequate-hiring policies. Dkt. 1, at 7-9.[9] HCSO argues that summary judgment should be entered in its favor on these claims because Garcia has not established any constitutional violation or demonstrated any deficiency in the County's policies, knowledge on the part of the County of any unconstitutional behavior, or that such a deficiency was causally related to any alleged constitutional violation. Dkt. 40, at 8-19. To succeed on his claims against the County, Garcia "must show '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'" *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Because the Court will enter summary judgment in favor of the Individual Defendants on Garcia's false-arrest claims and in

---

[9] As the County points out, to the extent Garcia relies on the County's allegedly inadequate policies for preventing use of force, he has abandoned that claim by failing to brief it or provide any evidence in support of it in his response. Dkt. 46, at 3. Moreover, HCSO presented evidence that it does in fact have policies for preventing unlawful use of force by officers and Garcia has not explained how these policies are constitutionally deficient. Dkt. 38-6, at 3-8. In his complaint, Garcia alleges that the policies are "inadequate," yet "a written policy cannot be facially unconstitutional solely due to instructions that it leaves out." *Edwards v. City of Balch Springs*, 70 F.4th 302, 314 (5th Cir. 2023).

favor of all the officers except for Blanchard on Garcia's excessive-force claims, any *Monell* claims arising from the allegedly false arrest (and use of force by any of the officers apart from Blanchard) also fail. As to any *Monell* claims arising from Blanchard's use of force, the Court likewise finds that summary judgment should be entered in the County's favor.

Garcia's failure-to-train, failure-to-supervise, and failure-to-discipline theories all require him to prove that (1) the County failed to train, supervise, or discipline the officer involved; (2) there is a causal connection between the alleged failure to supervise, train, or discipline and the alleged violation of Garcia's rights; and (3) the failure to train, supervise, or discipline constituted deliberate indifference to his constitutional rights. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001); *Deville*, 567 F.3d at 171. Garcia has not demonstrated or created a genuine issue of material fact as to the County's deliberate indifference to his constitutional rights under his failure-to-train, failure-to-supervise, and failure-to-discipline theories of liability. Since Garcia has not identified any "pattern of similar constitutional violations by untrained [or unsupervised] employees" to show deliberate indifference, his failure-to-train and failure-to-supervise may only proceed on a "single-incident theory." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018); *Grandstaff v. City of Borger*, 767 F.2d 161,171 (5th Cir. 1985). In the failure-to-train context, liability under a single-incident theory is generally reserved for those cases in which the government actor was provided no training whatsoever; here, the County presented substantial evidence regarding its training of officers  and Garcia has not

presented any evidence of the County's failure to train or supervise its employees apart from positing that current training is inadequate. *See* Dkts. 38-7; 40-15, at 6; 42, at 10-13; *Pena*, 879 F.3d at 624; *Connick v. Thompson*, 563 U.S. 51, 68 (2011) ("[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability.").

In the failure-to-supervise and failure-to-discipline contexts, liability based on a single incident is similarly reserved for "extreme factual circumstances." *Tarver v. City of Edna*, No. 03-cv-39, 2006 WL 3053409, at *8 (S.D. Tex. Oct. 26, 2006). In *Grandstaff*, for example, the Fifth Circuit allowed a plaintiff to proceed on a single-incident failure-to-discipline theory where supervisors "concerned themselves only with unworthy, if not despicable, means to avoid liability" after the entire night shift of the city police, in response to a minor traffic violation, killed an innocent rancher by directing gunfire at anything that moved despite nobody except the police ever having fired a shot. *Grandstaff*, 767 F.2d at 165-66, 171. "In cases without equally extreme facts, [however,] the Fifth Circuit does not permit an inference of an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident." *Tarver*, 2006 WL 3053409, at *8 ("Not surprisingly, *Grandstaff* has not enjoyed wide application."). Here, the Court finds that Garcia has not produced any evidence demonstrating that Blanchard's actions were so extreme as to permit an inference of an unconstitutional policy from the single incident of the County's alleged failure to discipline Blanchard for his use of the taser.

Finally, Garcia's inadequate-hiring policies theory of liability also required him to demonstrate the County's "deliberate indifference" to the "known or obvious consequence[s]" of its hiring decision with regard to Blanchard. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). Deliberate indifference exists "where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights." *Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998)). To show deliberate indifference, the connection between the background of the individual and the specific violation alleged must be strong, as the plaintiff "must show that the hired officer was highly likely to inflict the particular type of injury [he] suffered." *Id.* at 434; *see also Brown*, 520 U.S. at 412. Here, Garcia did not present any evidence suggesting that the County hired Blanchard with knowledge that Blanchard was "highly likely" to use excessive force on a suspect; in fact, Garcia did not address this theory of liability at all in his response. *See* Dkt. 42. Because HCSO has met its burden of demonstrating that Garcia "cannot produce admissible evidence to support" his allegation that the County was deliberately indifferent with regard to hiring Blanchard, Fed. R. Civ. P. 56(c), summary judgment will be entered in HCSO's favor on Garcia's *Monell* claim arising from the County's alleged inadequate-hiring policies.

Based on the foregoing, the Court will enter summary judgment in HCSO's favor on all of Garcia's claims against the County.

## V.    CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Individual Defendants'
motion for summary judgment, Dkt. 39 is **GRANTED IN PART** and **DENIED IN
PART**. Specifically, summary judgment will be entered in the Individual Defendants'
favor on Garcia's false-arrest and conspiracy claims and in Defendants Haltermann,
Thomas, Cornic, and Whetstone's favor on Garcia's excessive-force claims. The
Individual Defendants' motion for summary judgment is denied as to Garcia's
excessive-force claim against Blanchard. **IT IS FURTHER ORDERED** that HCSO's
motion for summary judgment, Dkt. 40, is **GRANTED**. Summary judgment will be
entered in HCSO's favor on Garcia's claims against the County.

SIGNED June 26, 2025.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE